## The Union Pacific Railway Company v. W. H. Winterbotham.

1. INJURED EMPLOYÉ — *Authority to Employ Physician.* A division superintendent of a railroad company has authority to employ physicians and surgeons to attend upon employés injured in the service of the company he represents.

2. EVIDENCE — *Overruling Demurrer, not Error.* A brakeman whose foot was crushed while he was employed in the service of a railroad company desired the attendance of a certain physician, and this desire having been brought to the attention of the division superintendent, he telegraphed to the station agent directing him to notify the physician; and, in obedience to this direction, the agent called the physician, telling him that he was called at the instance of the division superintendent, and, after furnishing him with medi-

cines and surgical appliances from the medicine chest kept by the company, took him to the injured employé, where medical and surgical services were rendered. *Held,* In an action to recover the value of such services, that these and other circumstances surrounding the transaction tended to show an employment by the company and, upon an examination of the evidence offered by the plaintiff, it is *held,* that no error was committed in overruling a demurrer thereto.

3. INSTRUCTION, *Omitted.* The omission of the court, in charging the jury, to construe the language employed in the telegram sent by the division superintendent is not material error, since no such instruction was requested by the company.

4. CASE, *Followed.* The case of *Gas Co. v. Schliefer,* 22 Kas. 468, followed.

*Error from Saline District Court.*

ACTION by *Winterbotham* against the *Union Pacific Railway Company,* to recover for services performed. At the March term, 1890, plaintiff had judgment, and defendant brings error. The material facts appear in the opinion.

*A. L. Williams, N. H. Loomis,* and *A. F. Williams,* for plaintiff in error:

The court below committed error in overruling the demurrer of defendant. The petition of plaintiff alleges that the plaintiff rendered services "at the special instance and request of the said the Union Pacific Railway Company." Unless the testimony of plaintiff established that fact, the demurrer of defendant should have been sustained. *Wisner v. Bias,* 43 Kas. 458.

Barr, the station agent, was acting under instructions from Palmer, and his testimony goes to prove that he understood the message as instructing him to employ the plaintiff at Johnson's request. Without the telegram, he, as station agent, had no authority whatever to employ a physician. *A. & P. Rld. Co. v. Reisner,* 18 Kas. 458.

The defendant's motion for a new trial should have been sustained. Error was committed by the court in giving certain instructions to the jury. It was unquestionably the duty of the court to construe the telegram offered in evidence. It

was not a question of fact for the jury, and it was the duty of the court to instruct as to just what the telegram meant. If, in his opinion, it was intended by Palmer to authorize Barr to employ the plaintiff for the company, he should have so instructed the jury. If he thought Palmer did not intend to authorize Barr to employ the plaintiff for the company, but did request him to notify the plaintiff for Johnson, he should have so instructed the jury. The whole transaction is based on this telegram, and it should have been construed by the court and not the jury. See *Bell v. Keepers*, 37 Kas. 64; *Warner v. Thompson*, 35 id. 29.

The court below also committed error in rendering judgment for $200 and interest, in all $204, when the plaintiff prayed for $200. See *Green v. Dunn*, 5 Kas. 254; *A. T. & S. F. Rld. Co. v. Combs*, 25 id. 729; Gen. Stat. of 1889, ¶ 4170.

*R. A. Lovitt*, and *William A. Norris*, for defendant in error:

This court has repeatedly held that a demurrer to plaintiff's evidence ought not to be sustained when there is any testimony — even though it be weak and inconclusive — that tends to prove the issues. See *Simpson v. Kimberlin*, 12 Kas. 579; *K. P. Rly. Co. v. Couse*, 17 id. 571; *Wolf v. Washer*, 32 id. 533; *Mo. Pac. Rly. Co. v. Pierce*, 39 id. 391; *Hopwood v. Corbin*, 18 N. W. Rep. 911.

Station agent Barr did not intimate to the plaintiff that Johnson had sent for him, but all the circumstances led plaintiff to believe that he was acting for the Union Pacific Railway Company in treating Johnson.

The gist of the telegram was that Johnson did not want to be treated by the doctors at Oakley, nor by Phillips, the company's physician, but wanted the company to procure Doctor Winterbotham for him, which it did. We think this construction is warranted by *A. & N. Rld. Co. v. Reecher*, 24 Kas. 228.

The trial court refused to construe the telegram offered in evidence, in its instructions to the jury. The position taken

by counsel for plaintiff in error is manifestly untenable, and the authorities cited in support of the proposition that the trial court should have construed the telegram for the jury are inapplicable. The telegram was not a "written statement," within the purview of *Bell v. Keepers*, 37 Kas. 64.

In the cases cited, the "written instruments," which this court held should have been construed by the trial court, were contracts for the sale and purchase of property, signed by the parties. The difference between the "written instruments" in the cases cited, where the contracts were reduced to writing for the purposes of precision and preservation, and the written telegram in question, which was reduced to writing for quite a different purpose — that of transmission and delivery — is apparent without argument. A writing is not necessarily a "written instrument." See *Ewing v. Robeson*, 15 Ind. 26.

It is further claimed by plaintiff in error, that the trial court erred in allowing interest on plaintiff's claim. The authorities cited are again inapplicable, as they refer to questions arising on a petition and not on a bill of particulars.

But this case having been begun on a bill of particulars before a justice of the peace, and the defendant being present at the trial, interest was properly allowed. *Gas Co. v. Schliefer*, 22 Kas. 468.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action by Doctor Winterbotham to recover from the Union Pacific Railway Company $200 for services rendered by him as physician and surgeon for an employé of the company. The case was submitted to the jury upon the testimony, and a verdict was returned for $200, with interest from November 6, 1889, and judgment thereon was rendered for the sum of $204.

The principal contention is, that the testimony was insufficient to justify the verdict that was returned. From the testimony of the plaintiff below, it appears that on May 9, 1889, while F. W. Johnson was employed in the capacity of

brakeman, near Oakley, Kas., the train ran over and crushed his foot so that amputation was necessary. He was at once taken in charge of and cared for by the employés of the company. The conductor under whom he was acting inquired whether he wished to be taken to the company's hospital, remain at Oakley, or go to Salina, where he resided, for treatment. He expressed a wish to be treated at Salina by Doctor Winterbotham. The conductor stated that he had no authority to ask Winterbotham, but that he would notify Mr. Palmer, who was the division superintendent, and accordingly sent a message to him. In response to this, the division superintendent sent the following message to the agent of the company at Salina:

(Union Pacific form No. 2191.)

WALLACE, May 10, 1889.

*To W. S. Barr:* Brakeman Johnson had his foot run over at Oakley, and asks us to notify Doctor Winterbotham to be at his home on the arrival of train 202, to dress it, as he does not want doctors at Oakley to do it. I presume there is a way for him to get from the depot to his home. Please notify the doctor. A. T. P."

Johnson was placed on the next train going to Salina, and when he arrived there he was met by Mr. Barr, the agent, who inquired whether he wanted to go to the office of Doctor Phillips, who was the company's local physician at that place, or to be taken home. He replied that he desired to be taken home, and to have Doctor Winterbotham to attend him. Mr. Barr sent him to his home, and immediately proceeded to the office of Doctor Winterbotham and solicited the doctor to accompany him to Johnson's home. He stated that he had received a dispatch from the division superintendent requesting him to have Doctor Winterbotham treat the patient. Barr first took the doctor to the Union Pacific depot, and there obtained medicines, instruments and surgical appliances belonging to the company, for use in the operation to be performed upon Johnson. After an examination of the injured foot, and upon consultation with other physicians, amputation was determined to be necessary, and was accordingly

performed. He continued in charge of the case so long as his attention was necessary, and his services were reasonably worth the sum of $200.

We think the testimony tended to sustain the doctor's claim, and that the court committed no error in overruling the demurrer to his evidence. The fact that the testimony is weak or inconclusive would not have justified the court in taking the case from the jury. The demurrer admitted every fact and conclusion which the evidence most favorable to the plaintiff tended to prove, and every reasonable inference arising upon such testimony must be allowed in his favor. It is well settled that, unless there has been a total failure on the part of plaintiff to prove a cause of action or some material fact in issue, a demurrer to evidence must be overruled. (*Brown v. A. T. & S. F. Rld. Co.*, 31 Kas. 1; *Schuster v. Kurtz*, 47 id. 255.) Johnson was injured while employed in the service of the company, and it is a reasonable provision to care for and to cure those injured in the hazardous service of railroading. It appears to be customary for railroad companies to provide hospitals as well as to employ physicians and nurses for the care of injured employés. As has been stated, the company is interested in the speedy cure of employés who have been disabled, and in their early resumption of the duties in which they have been specially trained, and hence the proper officer or agent of the company may bind it for medical attention rendered in their behalf. (*U. P. Rly. Co. v. Beatty*, 35 Kas. 265.) It is well settled that a general or division superintendent has authority to employ physicians and surgeons to give attention to employés injured in the service of the company he represents. (*Pacific Rld. Co. v. Thomas*, 19 Kas. 256; *A. & N. Rld. Co. v. Reecher*, 24 id. 228; *Railroad Co. v. Davis*, 44 Am. & Eng. Rld. Cases, 459.) As has been seen, the conductor, acting for the company in the emergency, proposed to send Johnson to the hospital, have him cared for where the accident occurred, or send him to Salina. It appears that he would

2. Evidence— overruling demurrer, not error.

1. Injured employe—authority to employ physician.

have been cared for at the hospital or attended by the company's physician at the expense of the company; but when he asked that Doctor Winterbotham attend him, the conductor in effect stated that he had no authority to employ Doctor Winterbotham, but that such a request must come from Palmer, the division superintendent, and that he would ask him to make the request. Palmer sent a telegram to the agent to have the doctor there on the arrival of the train. It is true the message is somewhat ambiguous and does not specifically state that the company would pay for his services; but the terms used and the circumstances surrounding the transaction tend to sustain the conclusion of the court and jury, that he was employed in behalf of the company. If Johnson was to employ and pay for the services, there was no necessity to apply to the division superintendent, who was many miles away, to procure the services of the doctor. If an authorized employment by the company was not intended, a request from the conductor or station agent would have served the purpose. The request was sent by one having authority to employ, and when the doctor inquired at whose request he was sent for, he was told by the agent of the company that he came for him at the instance of Palmer, the division superintendent. The telegram of the division superintendent, although ambiguous, was open to the construction which appears to have been placed upon it by the agent of the company at Salina; and, as tending to show the view which he took as to the authority to employ, he not only procured a carriage to take the doctor to the place where the injured employé was to be treated, but also obtained for the doctor from the storehouse of the company medicines, instruments and appliances necessary for the treatment of the employé. Accepting the testimony most favorable to the plaintiff to be true, as we must, he had a right to infer, from the statements made to him by the agent, that he was called in behalf of the company, and that the construction apparently put upon the telegram by the agent was the correct one. The common

practice of the company of furnishing medical care and attention to injured employés, the direction of the division superintendent to notify the doctor to attend Johnson, the action of the agent in calling the doctor and telling him that he was called at the instance of the division superintendent, and the further action of subsequently furnishing medicine and appliances for the treatment of the employé from the medicine chest of the company, taken in connection with the telegram of the division superintendent, fairly tend to support the verdict of the jury.

There is some complaint that the court failed to construe the telegram which was offered in evidence, or the language which it contained. The telegram is not in the nature of a contract or written instrument, and the purpose and liability of the company was to be determined from the telegram and the circumstances surrounding the transaction.

3. Instruction, omitted. A sufficient answer to the objection is, that no instruction of the character mentioned was requested by the plaintiff in error. (*The State v. Pfefferle*, 36 Kas. 96; *The State v. Peterson*, 38 id. 211.)

The final complaint is, that interest was allowed upon the bill of the plaintiff below, when there was no specific demand for interest in the pleadings. The action was begun before a justice of the peace, and the pleading was a bill of particulars upon a verified account for $200. After it had been appealed, and when it was finally tried, the court charged that the action was brought to recover $200, with the interest thereon. It does not appear that any specific objection was made to this reference to interest for the reason that it was not demanded in the bill of particulars. As no formal prayer for relief is required in a bill of particulars, and as the plaintiff was entitled to interest upon his claim, and as the court, in the presence of the parties, instructed

4. Case, followed. that the interest was recoverable, we may fairly treat the case as though an amendment was in fact made, and hold that no substantial rights of the defend-

ant have been prejudiced. (*Gas. Co. v. Schliefer*, 22 Kas. 468.)

The judgment of the district court will be affirmed.

All the Justices concurring.