[No. 1407.]

## THE MOUNT WILSON GOLD AND SILVER MINING CO. v. BURBRIDGE.

| 11 | 487 |
|---|---|
| 18 | 283 |

1. APPELLATE PRACTICE—EVIDENCE—EXCEPTIONS.

Error cannot be predicated on the admission of evidence, over objection, unless an exception be taken to the ruling of the court admitting the evidence.

2. EVIDENCE.

Evidence that the superintendent of a mining company had a miner, who was injured while working for the company, taken to a hospital and the next day called at the hospital and told the manager to take good care of him and it would be all right, was sufficient to justify a verdict against the company for services for nursing and caring for the injured miner.

3. PRINCIPAL AND AGENT—PRESUMPTION OF AUTHORITY.

A general superintendent of a mining company, who has full charge of the business and property of the company, is presumed to have authority to bind the company for the expense of nursing and caring for a miner injured while in the employ of the company.

*Appeal from the District Court of San Miguel County.*

Messrs. WILSON & McCLOSKEY and Mr. S. R. FITZGARALD, for appellant.

Mr. A. B. SEAMAN and Mr. LUCIUS WEINSCHENK, for appellee.

THOMSON, P. J., delivered the opinion of the court.

The appellee was plaintiff below. In her complaint she alleged that on the 14th day of October, 1895, she was conducting a hospital in the town of Telluride; that on that day one James Rofino, an employee of the defendant, was injured by means of the machinery operated by it, and, by the order of its manager and general superintendent, was conveyed to Telluride to be taken care of as his necessities might require; that in pursuance of that order Rofino was placed in charge

of the plaintiff, and cared for by her for one hundred and sixty-six days; and that her services were worth $768, for which sum she prayed judgment.

The defendant answered, admitting the injury to Rofino by its machinery; alleging that the injury was not serious, but that he was cured and healed in thirty days, and needed no nursing beyond that time; and denying that he was conveyed to Telluride or to any other place, or put in charge of the plaintiff, by the order of the manager or general superintendent of the defendant, or by any person authorized to act for it. The answer was verified by J. P. Colp, who stated in his affidavit of verification that he was the general superintendent of the defendant, and in full charge of its affairs and property.

At the trial the plaintiff testified that Rofino was brought to her hospital by a man named Seavers, who said that Mr. Colp told him to bring Rofino down and get the best treatment he could, and the defendant company would pay the bill; that on the next day Mr. Colp called on her and told her to do the best she could for Rofino, and that it would be all right. Rofino testified to the conversation between the plaintiff and Colp above mentioned, and corroborated the plaintiff in her statement that Colp told her to give Rofino good care and it would be all right. Mr. Seavers was a witness, but his testimony was not very explicit. However, it appears from it that he took Rofino to Telluride by the direction of Colp, but he denied that he told the plaintiff that he brought Rofino to her by Colp's order, and said that Colp gave no direction what to do with him after he should be brought to town. He also stated that the next day Mr. Colp asked him where he had left Rofino, and what doctor had been employed, and he answered the question according to the facts. Another witness, Barney Chido, testified that he was present at the mill when Rofino arrived from the mine, and that Mr. Colp said, "You boys take this man to town and I think the company will pay for it." Mr. Colp testified that Rofino was hurt at the mine; that the mill was about a

mile and a half from the mine; that he, the witness, received at the mill a telephone message from the mine that Rofino was hurt, and ordered a carriage to bring him from the mine to the mill; that the defendant company paid the carriage bill and some other bills, but ordered the defendant not to pay such bills thereafter; that he did not authorize Seavers to take Rofino to town, and that he did not call upon the plaintiff, or have the conversation with her to which she testified. He did not deny that he was possessed of the requisite authority to contract for the nursing and care of Rofino, and there was no evidence tending to show that he was not.

It is said that the court erred in admitting certain testimony over the defendant's objection, but the ruling was not excepted to, and therefore no point can be made on it now. The jury found the facts to be with the plaintiff, and the only question is whether the facts were sufficient to authorize the verdict. It is contended that there was a failure of evidence to show either that Colp, expressly or by implication, authorized the plaintiff to render the services on which her claim was based, or, if they were rendered at his instance, that he acted by authority of the defendant.

There was evidence that when Rofino was hurt, Colp had him brought from the mine to the mill, and ordered him taken from there to town. No witness stated that Colp ordered him taken to the plaintiff's hospital, but it was in evidence that Colp was at the hospital the next day, and told the plaintiff to take good care of Rofino and it would be all right. We think the evidence was sufficient to justify a finding that the services were rendered at the request of Colp.

The complaint was verified, and its verification rendered necessary a verification of the answer. Colp verified the answer, and, to show that he was possessed of the statutory qualification for such purpose, stated in his affidavit of verification that he was the general superintendent of the company, and in full charge of its affairs and property. This affidavit is part of the record, and the defendant is bound by its statements. According to the affidavit, the authority of

Colp was very broad, and extended to everything connected with the business of the company. While, as was held in *Mining Co. v. Fraser*, 2 Colo. App. 14, he might not possess the power to bind the defendant by the purchase of new property, or, as was held in *Gregory v. Raber*, 1 Colo. 511, by the employment of labor outside of its business, still, as to everything belonging to or growing out of its business, or the management of its property, he represented it, and, presumptively at least, was authorized to act for it. Rofino was in its employ, and was injured by machinery which Colp was engaged in operating for it, his injury required attention, and we do not think his removal to the hospital, and his nursing while there, were so disconnected from the defendant's business as to be outside of the presumptive authority of Colp. Cooley, J., in *Railway Co. v. Taft*, 28 Mich. 294; *Railway Co. v. Rodrigues*, 47 Ill. 188; *Railway Co. v. Winterbotham*, 52 Kan. 433; *Walker v. Railway Co.*, L. R. 2 Exch. 228.

In *Railway Co. v. Rodrigues*, the facts were that an employee of the company was run over by a locomotive; the station agent employed the appellee to nurse him and take care of him; the plaintiff performed the services and presented his bill to the station agent; the latter submitted it to the general superintendent, who said that if the charges were reasonable he would pay them. The suit was by the appellee against the company to recover for his services. The court said: " Whether the station agent had such power or not, the general superintendent was clothed, and necessarily must be, with large specific as well as discretionary powers. As his title implies, he has a general superintendence of the business affairs of the road, and we deem it but a reasonable inference to conclude that this was within the scope of these powers, and when exercised, that the company must be held liable. The corporation is governed, within the limits of its charter, by the adoption of rules and regulations for the purpose. These regulations govern the action of its officers. By them they confer powers and impose duties on their various agents and officers; and by this means they exercise their franchises.

These regulations are private and not accessible to the public, and hence the difficulty of other persons showing, except by inference or circumstantial evidence, that any officer performs any act within the scope of his authority. It would, therefore, be unreasonable to require positive proof of such authority. The fact must be left to proof, as in other cases. And when it is known that the general superintendent manages all the business of the road within his department, and binds the company by contracts on his behalf, in regard to its general business, it may be safely inferred that such a contract as this was within the scope of his authority."

But aside from the presumption of authority in Colp, arising from the relations he sustained to the defendant, we have his testimony that his company paid some of the bills occasioned by the injury, among which was the carriage bill, and then ordered that no more bills of that kind should be paid. The fair inference from this is that before the order was made Colp had authority to contract such bills, and that the order was intended as a revocation of that authority. The order was issued after the carriage bill and the other bills to which he had reference, were contracted, and, nothing appearing to the contrary, it is to be presumed that it was issued after the services of the plaintiff were engaged. She was suffered to continue to nurse and care for Rofino until he was cured, without being notified of the order, and relying on the responsibility to her of the defendant company.

It would have been easy for the defendant to rebut the presumption of Colp's authority, because the facts were in its possession; and its failure even to make an attempt to do so, amounted under the circumstances of the case, to an admission that he was possessed of the necessary power.

The evidence as to some of the facts was conflicting, but there was enough to warrant the verdict, and the judgment will be affirmed.

*Affirmed.*

WILSON, J., not sitting.