[Civ. No. 889.    Second Appellate District.—February 23, 1911.]

## W. P. SCOTT, Respondent, v. MONTE CRISTO OIL AND DEVELOPMENT COMPANY, a Corporation, Appellant.

Action for Services—Care of Injured Employee of Oil Company at Sanatorium—Local Authority of President—Liability of Corporation.—Where the corporation defendant, though having its principal place of business at San Francisco, was engaged in developing its oil lands in Kern county, and had placed its president in supreme local authority at its works, it is held that he had presumed authority, where an employee was seriously injured thereat and became unconscious, to engage the services of a physician and surgeon, who found that he needed the operation of trephining, and to order him to be sent to a sanatorium for such operation, and to promise that the corporation would pay all bills therefor, and for nursing required thereat, and all bills required for his care at such sanatorium.

Id.—Circumstances Disclosed by Record—Reasonable Inference of Authority.—It is held that, under the circumstances disclosed by the record, it is but a reasonable inference to conclude that the making of the agreement by the president of the corporation was within the scope of the powers vested in him by the corporation.

Id.—Supposed Liability of Defendant for Negligence—Consideration for Contract—Presumed Interest.—If the injury to the employee was due to the negligence of the corporation defendant, then, in the absence of contributory negligence on his part, the corporation would be liable to him for all of the expenses incurred for his relief; and such circumstances would constitute sufficient consideration for making the agreement, and would raise a presumption that it was in the interest of the corporation to reduce its liability for damages on account of such injury.

Id.—Supposition of Nonliability for Injuries—Ratification of Acts — Moral Obligation.—Conceding that defendant was not legally responsible for the injuries sustained by the employee, yet as the company recognized an obligation to assist in relieving his

sufferings, and by paying for his transportation to the sanatorium gave some ratification to its president's acts in making the agreement, the moral obligation resting upon the defendant to furnish assistance and care to an injured employee constituted a sufficient consideration for the agreement made by the president of the company to pay the physician for professional services rendered to such employee.

Id.—Immaterial Finding—Injury in Performance of Duties—Absence of Evidence.—Though there is no evidence to sustain a finding that the injury was sustained by the employee in the course of its business, yet it is held that the error is not prejudicial, and should be disregarded as immaterial.

APPEAL from a judgment of the Superior Court of Kern County, and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Henry Ach, George E. Whitaker, and George E. Lawrence, for Appellant.

Matthew S. Platz, for Respondent.

SHAW, J.—Plaintiff is a physician and surgeon, and brought this action, both in his own behalf and as assignee of other claims, to recover for professional services rendered and medicines furnished to an employee of defendant, which services and medicines are alleged to have been rendered and furnished at defendant's request. Defendant is a corporation having its principal place of business at San Francisco, but at the times mentioned in the complaint was engaged in mining oil and the development of oil lands in Kern county. No question is made as to the rendition or value of the services alleged to have been performed, but defendant denies that the same were rendered at its request. The chief question, therefore, presented is whether defendant authorized plaintiff to render the services.

It appears from the findings that on or about the twenty-second day of February, 1908, one Leslie Ingalls was in the employ of defendant as a laborer upon certain oil lands which defendant was then engaged in developing; that while so

in the employ of defendant, and while performing the duties of his said employment, said Ingalls received great bodily injury and was so dangerously hurt that he lost all consciousness, and was absolutely helpless and unable to do or act for himself by reason thereof; that on said date defendant requested plaintiff, in his capacity of physician and surgeon, to attend said Ingalls and to care for and furnish all medical aid necessary in the treatment of his said illness caused by the injuries so received while in the employ of defendant; that the president of the corporation, in the presence of the field superintendent thereof, promised and agreed on behalf of said corporation that it would pay him for such services so rendered and to be rendered on behalf of said Ingalls, who was totally unable to act for himself and in a helpless condition; that plaintiff did attend said Ingalls and gave him medical aid and surgical assistance during the period extending from February 22d to and including April 5th, which services were of the reasonable value of $500. That one Anderson was the proprietor of a sanatorium, known as the Bakersfield Sanatorium, to which the president of the corporation, in the presence of the field superintendent, ordered the said Leslie Ingalls to be taken, and to be there nursed and cared for during his said illness, and the president of said corporation did promise and agree on its behalf that it would pay to said Anderson the expense and cost of the care and nursing of said Ingalls during his said illness; that from said twenty-second day of February to and including the fifth day of April, the said Anderson did care for, shelter, attend and nurse said Ingalls during his said illness, the reasonable value of which service was the sum of $456, which claim was duly assigned to this plaintiff. A like finding is made with reference to the claim of the drug company which is alleged to have furnished medicines and drugs for the use of said Ingalls during his said illness. It is further found that the corporation partially ratified the acts of its president in ordering medical aid, care and nursing of said Ingalls, by paying part of the expense that was incurred, in that the corporation paid the bill for the hire of the wagon wherein said Ingalls was conveyed from its property in the oil fields to the Bakersfield Sanatorium.

Judgment went for plaintiff for the sum of $966.90, from which, and an order denying its motion for a new trial, defendant appeals.

Defendant offered no evidence, but at the close of plaintiff's case moved for a nonsuit upon the ground that the evidence failed to show that Henry Ach, the president of the company, had authority to make contracts on its behalf. This motion was denied.

As disclosed by the record, the evidence tended to establish the following facts: Jones was superintendent of the company in charge of its local affairs. Ach was president of the company, and Jones received his orders and instructions pertaining to the management of the local affairs of the company from Ach as president, acting for and on its behalf. All of the business transacted in the community, other than that attended to by the superintendent, was transacted through Ach, its president. "What the superintendent said generally went." On February 22d, Ingalls, then in the employ of the company, in some manner not disclosed by the record, was seriously injured, his skull being fractured, necessitating an operation of trephining. In response to a telephone message, plaintiff went to the plant of defendant, located in the Kern county oil fields, where he found Ingalls in an unconscious condition in the bunk-house, at which time Ach, for and on behalf of the corporation, as its president, ordered Ingalls transferred to the private sanatorium of Louise Anderson, the expense of making such transfer being paid by defendant, and then stated to plaintiff, in the presence of the superintendent, that defendant would pay the bills. Thereafter, Ach, in his capacity as president, authorized the employing of nurses to attend Ingalls, and ordered the superintendent to see that everything possible was done for him. During the period from February 22d to April 5th Ingalls remained at the hospital, where he was attended by nurses employed for that purpose, and was treated by plaintiff, who procured drugs and medicines required for his use, all of which was done in reliance upon the promises made by the president of the corporation for and on its behalf, and by the superintendent of the corporation pursuant to instructions given him by the president of the corporation.

The contention of appellant is that the evidence fails to show any authority, either express or implied, on the part of the president or superintendent of the corporation to act for it in making such agreement or incurring such liability.

No question of *ultra vires* is involved.   The superintendent received his orders and instructions on behalf of the corporation from Mr. Ach.   Jones, the superintendent, testifies that Ach instructed him "to put on an extra nurse"; "that was his instruction, to do all that I could for the boy; that was his instruction always."   "That was the drift of the whole thing at all times, even to the letters, if any mention was made of the boy in any letter, it was to see that everything possible was to be done for the boy."   There is also evidence to the effect that plaintiff, after dressing the wounds of Ingalls at the bunk-house, asked whether they would send him to the hospital as a county charge, or to the private sanatorium, where the hospital charges would be $25 per week. If the injury to Ingalls was due to the negligence of the corporation, then, in the absence of contributory negligence on his part, the corporation would be liable to him for these claims and he might recover therefor.   Such circumstances would constitute a sufficient consideration for the making of the agreement and raise a presumption that it was in the interest of the corporation to do what it could to reduce its liability for damages on account of such injury.   It could not be said that an agreement of this character made under such conditions would not be within the scope of authority vested in one charged with the general power shown to have been exercised by Ach as president of the corporation.   The directors did not meet in Kern county; all of its business there was transacted through Ach, its president, and since he was held out by the corporation as possessing full power to act in its behalf in all matters arising and transacted in that vicinity, then, in the absence of anything to the contrary, the evidence was sufficient to raise a presumption that he was vested with the authority which he purported to exercise in making the agreement.   Under the circumstances disclosed by the record, we deem it but a reasonable inference to conclude that the making of this agreement by Ach as president of the company was within the scope of the powers vested in him by the corporation.   (*Toledo, W. & W. Ry. Co.* v.

*Rodrigues,* 47 Ill. 188, [95 Am. Dec. 484]; *Mt. Wilson Gold & Silver Min. Co.* v. *Burbidge,* 11 Colo. App. 487, [53 Pac. 826]; *Marquette etc. R. R. Co.* v. *Taft,* 28 Mich. 294; *Union Pac. Ry. Co.* v. *Winterbotham,* 52 Kan. 433, [34 Pac. 1052]; *Scott* v. *Oil Co.,* 144 Cal. 140, [77 Pac. 817]; *Crowley* v. *Genesee M. Co.,* 55 Cal. 273.)

Conceding that defendant was not responsible for the injuries received by Ingalls and might have refused to assist or care for him in any way, nevertheless, the company recognized an obligation to do something toward relieving his suffering and assisting him, and did send him to the sanatorium and paid for the services rendered in such transportation, which, however small, constituted some ratification of the acts of its president. In the case of *Louisville etc. Ry. Co.* v. *McVay,* 98 Ind. 391, [49 Am. Rep. 770], it is said: "There is no evidence as to how Barnett was injured; but inasmuch as the general manager ratified contracts for taking care of him, and the company paid for such service (except the claim of appellee), it should be presumed—there being no evidence to the contrary—that the injury was so inflicted as that the contract for his care was not *ultra vires.*" The case at bar is not unlike that of *Fraser* v. *San Francisco Bridge Co.,* 103 Cal. 79, [36 Pac. 1037], where it was held under the circumstances of that case that the moral obligation resting on the defendant to furnish assistance and care to an injured employee, for which the corporation was in no wise responsible, constituted a sufficient consideration for the agreement made by the president of the company to pay a physician for professional services rendered such employee.

The finding to the effect that the injury was received by Ingalls while performing the duties of his employment finds no support in the evidence, but, under our view of the case, the error is not prejudicial, and hence should be disregarded as immaterial.

We find no merit in appellant's contention as to the commission of other alleged errors.

The judgment and order are affirmed.

Allen, P. J., and James, J., concurred.