[Civ. No. 10408.   Second Appellate District, Division One.—July 8, 1936.]

JOHN RAYMOND MEDBERRY, a Minor, etc., et al., Appellants, v. JOHN OLCOVICH et al., Respondents.

C. H. Hartke and Freeman R. Brant for Appellants.

George Appell for Respondents.

WHITE, J., *pro tem.*—This appeal is prosecuted from a judgment entered against plaintiffs and in favor of defendants. The action was one for damages for personal injuries sustained by the minor plaintiff, who was a guest in an automobile which was overturned near the intersection of Norton Avenue and Fourth Street, in the city of Los Angeles, shortly after 7 o'clock on the evening of September 27, 1933. Plaintiff C. J. Medberry, Jr., was joined as plaintiff in the capacity of guardian *ad litem* and also individually. Named as defendants are the owner and driver of the guest car, John Olcovich, a minor, and his parents, Emil Olcovich and Dorothy Olcovich, who had signed his application for a driver's license.

The complaint herein contains three causes of action; the first of which is for damages under the provisions of section 141¾ of the California Vehicle Act, as amended by the Statutes of 1931, page 1693, for wilful misconduct of the minor defendant, John Olcovich, driver of the guest car.

In this cause of action the parents of said minor driver are joined as parties defendant upon the theory of imputed liability under the terms of section 62 (b) of the California Vehicle Act, as amended by the Statutes of 1929, page 522, for the reason that said parents had signed their minor son's application for an operator's license. The second cause of action set forth in the complaint is framed upon the theory that the minor defendant, John Olcovich, was acting as the agent and servant of his father, defendant Emil Olcovich, in making the auto trip which culminated in the injuries to the minor plaintiff. The third cause of action is in contract, and is predicated upon a promise and agreement made by defendant Emil Olcovich with the plaintiff C. J. Medberry, Jr., to pay reasonable expenses incurred by the latter for medical and surgical expenses, hospital bills and other like expenses arising from efforts to cure said minor plaintiff.

The answer denies that defendant John Olcovich was operating the automobile in a careless, reckless, wanton or wilful manner; fails to deny, thereby admitting, that defendants Emil Olcovich and Dorothy Olcovich signed the application made by their minor son for a driver's license; and at the trial it was stipulated that such was the case. As to the second cause of action, the defendants deny that the defendant John Olcovich was the agent or servant of Emil Olcovich; while the third cause of action, based upon the alleged agreement to pay reasonable hospital and medical expenses incurred by reason of the accident, is denied categorically. Defendants set up as an affirmative defense that the minor plaintiff, John Raymond Medberry, was a guest of the minor defendant, John Olcovich, at the time of the accident, and that said accident occurred without any wilful misconduct on the part of said defendant. As defenses to the third cause of action, it was alleged that the court had no jurisdiction of the subject-matter therein alleged or the person of the defendant Emil Olcovich, and further, that there was no consideration for the promise and agreement alleged in the said third cause of action. With the issues thus framed, the case proceeded to trial before the court, sitting without a jury, and a judgment was rendered in favor of defendants.

The evidence discloses that on the evening of the accident the sixteen-year-old minor defendant, John Olcovich,

called at the home of the seventeen-year-old minor plaintiff, John Raymond Medberry, and requested the latter to take a ride with him. The two boys got into the automobile, which belonged to the minor defendant, John Olcovich, and which was several years old, being of the so-called "stripped roadster" type. The minor defendant drove the car a short way at a speed testified to be about 20 miles per hour, when a stop was made at 427 South Norton Avenue. Said minor defendant left the automobile with the motor running, and was gone only momentarily, then returned to the automobile and drove north on Norton Avenue "with all the power the car had in it". The automobile had attained a speed of between 25 and 30 miles per hour at the time it reached the intersection of Norton Avenue and Fourth Street, which was approximately 400 feet from the place where the stop had been made. Upon reaching the intersection, the minor defendant, according to the minor plaintiff, suddenly made the remark, "Watch me take this one," and swerved the car to the right in an attempt to turn the corner and go east on Fourth Street. The record indicates that in making the turn the automobile was going at a speed of between 20 and 25 miles per hour. After turning the corner, the minor defendant endeavored to turn the front wheels of the car and straighten the same out, but discovered that the wheels had "locked", and that it was impossible to turn the same back to their usual position. As a result, the automobile continued in its curving direction and headed for the south curb of Fourth Street, where it turned completely over, throwing the minor plaintiff, John Raymond Medberry, out. The evidence indicates that to the knowledge of the minor defendant, the front wheels on this automobile had locked "quite a few times" prior to the accident involved herein when said minor defendant was making turns at speeds of from 15 to 20 miles per hour. In answer to a question as to whether it was not a fact that the faster he went the more apt the wheels were to "lock", the minor defendant testified in the affirmative. The minor defendant testified that on previous occasions when he had similar trouble with the automobile in question, he had the same repaired, and that about a week prior to the accident here in question, when similar trouble overtook him, he had the same repaired at a garage, and that during the week immediately preceding the accident, and after the

garage had repaired the automobile, that he had driven it "quite a bit", but that the wheels of the car had not, during that interim, "locked" at any time.

The trial court found that the accident in question was not directly or approximately caused by the reckless or wanton or wilful misconduct of the minor defendant, and absolved the latter of any wilful misconduct in the operation of the automobile.

The question of whether the minor defendant was or was not guilty of wilful misconduct is essentially one of fact for determination by the fact-finder. Appellants extensively review many cases involving wilful misconduct, calling our attention in their review that the facts in the instant case are similar to facts in some cases where judgment went for plaintiff, and that they are dissimilar to facts in other cases where defendant prevailed. It must be borne in mind, of course, that the interpretation to be given actions and conduct must turn on the circumstances of the individual case, and that decisions passing upon facts constituting, or failing to constitute, wilful misconduct, can be of little assistance, other than to announce the definition of that term. It is our duty on appeal to indulge in all reasonable inferences to support the findings and judgment. (*Volat* v. *Tucker,* 9 Cal. App. (2d) 295 [49 Pac. (2d) 337].)

Various definitions of the phrase "wilful misconduct", as used in our so-called guest statutes, appear in the many cases that have had occasion to consider the same, but our Supreme Court, in the case of *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194], adopts as satisfactory the definition in *Turner* v. *Standard Oil Co.,* 134 Cal. App. 622, 626 [25 Pac. (2d) 988], wherein it is declared that " 'wilful misconduct', within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result". Further in the case of *Meek* v. *Fowler, supra,* the Supreme Court says: "The case of *Howard* v. *Howard,* 132 Cal. App. 124, 128 [22 Pac. (2d) 279], after defining gross negligence as set forth in *Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327], and what is meant by wilful misconduct as set forth in *Helme* v. *Great*

*Western Milling Co.,* 43 Cal. App. 416 [185 Pac. 510], declares that *'The mere failure to perform* a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.'

"While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given, in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another *or to do an act with a positive, active and absolute disregard of its consequences.* (Italics ours.) It seems clear that in excluding all forms of negligence as a basis for a recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence *and that this misconduct must be wilful.* . . . In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. *But 'wilful misconduct' as used in this statute, means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence.* Wilful misconduct implies at least the intentional doing of something either *with a knowledge that serious injury is a probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result." (Italics ours.)

Upon the record before us, and in the light of the testimony herein set forth, remembering that about a week prior to the accident, when the wheels of the automobile "locked", the minor defendant took the car to a garage and had a mechanic repair it, that he drove the car "quite a bit" during that week without recurrence of the trouble, we cannot say that the finding of the trial court, that the conduct of the minor defendant was without knowledge that serious injury would be a probable result thereof, and that such conduct lacks any element of intentionally doing an act

with wanton and reckless disregard of its possible result, does not find in the record evidence of sufficient substantiality to support it. Such being the case, the finding of the trial court in this regard is conclusive. Holding, as we do on this point, it becomes unnecessary to decide the question raised as to imputed liability of the parents who signed the minor defendant's application for a driver's license. This question, however, was given consideration and decided by us in *Gimenez* v. *Rissen,* 12 Cal. App. (2d) 152 [55 Pac. (2d) 292, 56 Pac. (2d) 299].

With reference to appellants' second cause of action, predicated on the existence of the relationship of master and servant between defendant Emil Olcovich and the minor defendant, John Olcovich, the record is barren of any proof to sustain the same, and for that reason the finding of the trial court thereon in favor of defendants was correct.

Appellants' attack upon the court's findings and judgment as to count three of the complaint presents a more serious question. The trial court found as facts that plaintiff C. J. Medberry, Jr., father of the minor plaintiff, John Raymond Medberry, necessarily incurred expenses in the sum of $1,058 for medical and surgicial attention to said minor plaintiff; that said sum was the reasonable value of such services; that defendant Emil Olcovich had agreed to pay the reasonable medical and surgical expenses, and that in reliance upon said promise the father of said minor plaintiff incurred said expenses. The finding that such promise was made by defendant Emil Olcovich and that the father of the minor plaintiff relied thereon is supported by testimony in the record given by plaintiff C. J. Medberry, Jr., and corroborated by the witness C. E. Brooks. The father of the minor plaintiff testified: "He said that he was very sorry that the accident happened and got up to go, and as he got to the door, he said, 'Now, Mr. Medberry, we are sorry that this thing has happened, but you have whatever done is necessary to get the boy fixed up, and I will stand any reasonable expense.' And I thanked him, and said that was nice, 'I appreciate that'; that I thought the doctor knew my financial condition; and I would see to it that they were made as low as could be and I would have those things done for the boy; and he replied, 'Well, you have the boy taken good care of and send me the bills.' "

It also appears from the record that subsequent to this conversation, and at the time the minor plaintiff was about to be dismissed from the hospital, plaintiff C. J. Medberry, Jr., had a conversation with defendant Emil Olcovich, in which the former advised Mr. Olcovich that his financial condition was such that he did not have money to pay the hospital bill, amounting to approximately $60. The following morning defendant Emil Olcovich brought to the father of the minor plaintiff $60, which was used to pay the hospital bill. On another subsequent occasion, defendant Emil Olcovich, pursuant to his promise, paid to plaintiff C. J. Medberry, Jr., $75.

But the trial court further found as a fact that said promise on the part of defendant Emil Olcovich was without "good consideration"; by reason of which defendant Emil Olcovich was not liable thereunder.

Appellants contend that the findings of fact as to lack of consideration for the promise of defendant Emil Olcovich to pay the reasonable value of medical and surgical expenses necessarily incurred by plaintiff C. J. Medberry, Jr., in an effort to cure his minor son, are contrary to law and without support in the evidence. We find ourselves in accord with this view of appellants. It is true that the defendant Emil Olcovich was in no way legally responsible for the injuries received by the minor plaintiff herein, and he might therefore have refused to assist or care for the minor plaintiff in any way; but the minor plaintiff had been injured while riding in an automobile driven by defendant Emil Olcovich's son, by reason of which the former expressed his sympathy for said minor plaintiff and his anxiety that the minor plaintiff should have good care. He was also aware of the fact that the minor plaintiff needed attention and care which, by reason of inadequate financial ability, the father of said minor plaintiff was unable to procure for the boy. Coupled with this is the fact that on two separate occasions the defendant Emil Olcovich, in conformity with his promise, made payments to the minor plaintiff's father, in the sum of $135. Under such circumstances, it seems to us there was some moral obligation resting on the defendant Emil Olcovich, predicated on his promise, to furnish to the minor plaintiff such assistance and care as were necessary to relieve the latter's suffering. This obli-

gation is shown by the evidence to have been recognized from the start, was partially executed by him, and in our opinion should be held to constitute a sufficient consideration for the legal obligation resting thereon. The defendant Emil Olcovich ought not now, therefore, after the services have been rendered and the expenses incurred in reliance upon his promise, and after he has made partial payments pursuant to his promise, be permitted to repudiate it, and deny all liability thereunder. This line of reasoning has been followed by the courts in numerous instances as for example, in *Scott* v. *Monte Cristo Oil etc. Co.*, 15 Cal. App. 453 [115 Pac. 64] ; *Fraser* v. *San Francisco Bridge Co.*, 103 Cal. 79, 84 [36 Pac. 1037] ; *Scott* v. *Superior Sunset Oil Co.*, 144 Cal. 140 [77 Pac. 817]. In our opinion, therefore, the appellants were entitled to judgment for the $1,058 which the court found to be the reasonable value of the medical and surgical expenses, less the $135 paid by defendant Emil Olcovich on account thereof.

The attempted appeal from the order denying the motion for a new trial is dismissed, for the reason that no appeal lies from such order.

For the foregoing reasons, the judgment is affirmed as to respondents John Olcovich and Dorothy Olcovich. As to the respondent Emil Olcovich the judgment is reversed, with directions to the court below to enter judgment in favor of appellants and against respondent Emil Olcovich in the sum of $923; the parties to bear their respective costs on appeal.

York, Acting P. J., and Doran, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1936, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing in this court is denied on the ground that the judgment of the District Court of Appeal is proper even though it may assumed to be based upon the conclusion, among others, that the agreement was sufficiently supported by a moral obligation. The plaintiffs suffered prejudice by reason of the expenses incurred by them on the promise of the defendant Emil Olco-

vich. Under such circumstances a sufficient legal considera-tion for the promise was present. (Secs. 1605, 1606, Civ. Code.)