[S. F. No. 7489.   In Bank.—March 6, 1917.]

## NORTH PACIFIC STEAMSHIP COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF CALIFORNIA et al., Respondents.

Workmen's Compensation Act—Constitutionality—Death Benefits—Injuries to Mariners on Navigable Waters.—The general scheme of the Workmen's Compensation Act is constitutional, the provisions allowing awards for death benefits are valid, and the act authorizes awards for injuries received by mariners on navigable waters.

Id.—Findings of Industrial Accident Commission—Willful Misconduct—Total Absence of Evidence—Review by Supreme Court.—The finding of the Industrial Accident Commission that the injury to an employee was not the result of his own willful misconduct is subject to review in the supreme court if totally unsupported by the evidence. The commission is, however, the body charged with the determination of issues of fact, and its findings of fact are not reviewable where they find support under any rational view of the evidence.

Id.—Meaning of "Willful Misconduct"—Negligence.—The phrase "willful misconduct," as used in the section of the Workmen's Compensation Act exempting an employer from liability where the injury was caused by the willful misconduct of the injured employee, means something more than negligence, more, even, than gross negligence.

Id.—Stranding of Steamer—Disobeyance of Captain's Order to Take to Boats.—Under the facts in this case, it cannot be held, as matter of law, that the second officer of a steamer which was about to strike upon the rocks, who had taken his place in one of the small boats, in pursuance of the captain's order so to do, was guilty of willful misconduct in leaving the boat and returning to the steamer.

Id.—Lien for Attorney's Fee—Payment Directly to Attorney.—The commission, to render effective the lien of the attorney's fee for legal services pertaining to a claim for compensation, as authorized by section 29(b) of the Workmen's Compensation Act, may order the amount allowed as a fee to be paid by the employer directly to the attorney of the applicant.

APPLICATION of a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

C. H. Sooy, and H. W. Glensor, for Petitioner.

Christopher M. Bradley, for Respondents.

F. R. Wall, for Applicant.

SLOSS, J.—This is a writ of *certiorari* to review an award of the Industrial Accident Commission, allowing compensation to the widow of James Bolger for injuries causing his death. The petitioner for the writ was the owner of the steamer Eureka, engaged in coastwise trade between San Francisco and other ports. Bolger was the second officer of the Eureka. On January 8, 1915, while the vessel was off Point Bonita, outside the harbor of San Francisco, her engines stopped. The vessel was drifting toward the rocks, and the captain ordered the crew to take to the boats. All hands, with the exception of Bolger, made their way safely to shore in two boats. Bolger was on the vessel when she began to break up and was lost.

Most of the points made against the award have been removed from the field of discussion by decisions rendered since the present proceeding was instituted. It must now be taken as settled law in this court that the general scheme of the Workmen's Compensation Act (Stats. 1911, p. 796) is constitutional, that the provisions allowing awards for death benefits are valid, and that the act authorizes awards for injuries received by mariners on navigable waters. (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, [151 Pac. 398, 10 N. C. C. A. 1]; *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, [Ann. Cas. 1917E, 390, 156 Pac. 491]; *North Pacific Steamship Co.* v. *Industrial Accident Commission, ante,* p. 346, [163 Pac. 199].)

The petitioner contends that the commission was without jurisdiction to make the award, for the reason that the uncontradicted evidence shows that Bolger's death was the result of his own willful misconduct. Under section 12(a), (3) of the Workmen's Compensation Act, [Stats. 1913, p. 283], liability exists only where the injury is not ''caused by the intoxication or the willful misconduct of the injured employee.'' The commission found that Bolger's injury was not so caused. But its finding is subject to review here if totally unsupported by the evidence. (*Great Western Power Co.* v.

*Pillsbury,* 170 Cal. 180, [9 N. C. C. A. 466, 149 Pac. 35].)   The commission is, however, the body charged with the determination of issues of fact, and its findings of fact are not reviewable where they find support under any rational view of the evidence.

The words "willful misconduct," or phrases of similar import, are found in many workmen's compensation statutes. We need not undertake the difficult, perhaps impossible, task of giving an accurate and comprehensive definition of the term.   As is true, generally, of inquiries turning upon standards of human conduct, each case must turn upon its own peculiar facts and circumstances.   (*Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, [149 Pac. 35, 9 N. C. C. A. 466].) Certain it is, however, that "willful misconduct" means something more than negligence—more, even, than gross negligence.   In the Great Western Power Company case we held that a workman was guilty of willful misconduct where he had deliberately and intentionally violated a reasonable rule established for the very purpose of protecting men in his occupation from the danger of serious injury.

In the present case, it is claimed that Bolger deliberately violated a proper command of his superior officer, the captain, and that his death was the direct result of this disobedience. The testimony shows that when the engines stopped, and the vessel had struck, or was about to strike, the captain ordered the crew to take to the boats.   Two boats were available, and were launched, one, a "working boat" near the bow, and the other, a lifeboat near the stern.   Bolger's station was at the lifeboat.   Most of the evidence indicates that the captain and some of the men took their places in the working boat, while Bolger and others went into the lifeboat.   There is, however, some testimony that Bolger was with the captain in the working boat.   At any rate, Bolger, for some reason which is not disclosed by the evidence, left the boat in which he was, and went back to the steamer.   While he was still absent from his comrades, the lifeboat was cast off, and when Bolger was next seen, he was on the Eureka, appealing to the men in the boats to save him.   A high sea was running, and it was not possible to approach near enough to get Bolger off.

The willful misconduct asserted is the failure of Bolger to obey the captain's order to take to the boats.   Of course, he did, in the first instance, heed the command by going into the

boat. But the order of the captain may fairly be interpreted as an order to abandon the vessel once for all. This does not, however, answer the whole question. Did the evidence compel an inference that Bolger's act in returning to the ship was a deliberate and intentional defiance of his superior's command, in reckless disregard of his own safety? The situation was obviously one of great peril, and any competent mariner must have realized the necessity for a prompt leaving of the vessel. But when Bolger returned to the Eureka the lifeboat was still attached to the main vessel. We do not know the purpose of his return. It may, conceivably, have been a legitimate purpose, and one that might have been accomplished in a few moments. The entire episode, from the order to lower the boats to the final abandonment of the ship, occupied but a brief time. Bolger may well have thought that he could do what he set out to do on the vessel, and get back before the occupants of the boat should cast off. Some allowance may be made for errors of judgment in times of sudden emergency and stress. There can be no presumption that a man recklessly imperils his own life. In view of all the facts, we think the commission took no unreasonable view of the evidence when it found that Bolger was not guilty of willful misconduct. His actions were not those of one intending to refuse compliance with the captain's order to get into the boat. On the contrary, he showed his purpose of doing as he was bid. He was remiss, perhaps, in not following out the directed course as speedily as he might have done, but it cannot be said as a matter of law that his brief delay amounted to willful misconduct. This view of the commission's conclusion derives some additional support from the testimony of one witness, who stated that when Bolger left the boat to return to the ship, the captain was in the same boat and made no objection to Bolger's return. This is some evidence to indicate, either that the captain did not regard Bolger's return as a violation of his orders, or that Bolger was justified in thinking that the captain assented to his conduct.

A further point is made. Section 29(b) of the Workmen's Compensation Act authorizes the commission to "fix and determine and allow as a lien against any amount to be paid as compensation:

"(1) A reasonable attorney's fee for legal services pertaining to any claim for compensation. . . . " The findings de-

clare that Joseph A. Brown, attorney at law, has rendered legal services on behalf of applicant in this proceeding, of the reasonable value of $25. The award directs the steamship company to pay to the widow the sum of $3,750.30, to be paid as follows: (1) To Joseph A. Brown, attorney for applicant, the sum of $25 as a reasonable attorney's fee, (2) the balance to the widow in specified installments.

It is claimed that the act does not authorize the allowance of a sum of money to be paid directly to the attorney. It is difficult to see how the petitioner is injured by the form of the order, since the amount of the attorney's fee is deducted from the compensation allowed to the petitioner. But beyond this, we think the order complies with the intention of the act. It is provided that the commission may allow the attorney's fee as a lien against the amount to be determined as compensation. The petitioner does not suggest any method by which such a "lien" can be made effective otherwise than by intercepting the amount before it passes from the employer to the applicant. The method adopted by the commission seems to be the only available way of enforcing the lien.

The award is affirmed.

Shaw, J., Lorigan, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.