[Civ. No. 1224. Fourth Appellate District.—October 14, 1933.]

RICHARD E. TURNER, a Minor, etc., Respondent, v. STANDARD OIL COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

Borton & Petrini for Appellants.

Earl F. Crandell and Wm. Christensen for Respondent.

BARNARD, P. J. — This is an appeal from a judgment wherein the respondent was awarded damages for injuries received by him while riding as a guest on a truck owned by the appellant corporation. The accident occurred about 8 o'clock on the evening of October 10, 1931, at a point about four miles south of the Grapevine grade on the northerly portion of what is known as the Ridge Route. The appellant Shuman, a truck driver in the employ of the appellant Standard Oil Company, on the occasion in question was proceeding north in a four-ton truck containing a load of three tons, to which was attached a new six-wheel trailer which was empty. The truck was equipped with brakes which were in good condition but the trailer, although equipped with air brakes, was without an air coupling to fit the truck. Shuman was accompanied by his son, aged nineteen years. The respondent testified that at a point near the Newhall cut-off he solicited a ride and boarded the truck with the permission of the driver. He further testified that after riding about fifteen miles, and while they were on the Ridge Route grade, he noticed grease dripping from the rear end of the truck near the housing or differential; that he called this to the attention of Shuman who replied that he was going to stop soon and would see about it; that they stopped at Gorman and after starting on he asked Shuman whether he had examined the rear end, to which Shuman replied that he had forgotten it; and that they proceeded on their way traveling at a moderate rate of speed through Lebec.

The driver of another car testified that he followed the truck for some distance north of Lebec and noticed a lot of smoke coming from the rear of the truck. Neither Shuman nor the respondent noticed this smoke. A few miles north of Lebec the road pitches downward into Grapevine Canyon at about a six per cent grade and there Shuman reduced his gear to third gear in order to gain proper compression, and traveled down the grade at from fifteen to twenty miles

per hour. The truck had already passed many grades as steep or steeper than the one at that point. Suddenly something gave way and the truck proceeded to coast without motor compression for about a mile until the crash occurred. During this time Shuman endeavored to control the truck with the brakes but they soon overheated and failed to hold the truck. Along this portion of the road there was a bank on the right quite high in places and rocky and rugged, and on the left was a ravine. It was dark at the time and Shuman could not see clearly the lay of the land adjacent to the highway. He was unable to see any place where he could safely bank the truck and was kept busy dodging traffic until the crash which occurred when, after rounding a sharp turn, the trailer sideswiped a car proceeding in the same direction. Thereupon, he lost control of the truck, which jumped the bank and overturned. Both Shuman and the respondent were injured and Shuman's son was killed.

An examination of the truck after the accident disclosed that there was no oil in the housing and that the gears and the differential were stripped completely, breaking the circuit of power from the motor to the rear wheels of the truck. One witness testified that there were two places on the part of the highway where the truck was out of control where it could have been "banked successfully". However, a man who ran a garage near the scene of the accident testified that within two miles back there was "no place that you could go off very well without wrecking the truck". Two witnesses testified that after the accident Shuman stated to them that when the truck went out of control he lost his head and all he could think of was to keep the truck on the road. The respondent testified that until they came to the last hill, where the accident occurred, Shuman was proceeding at an ordinary and normal rate of speed, and a statement made by this witness was introduced in which he said: "During the eighty-odd miles I was either riding on the truck or trailer, Mr. Shuman drove very carefully and apparently handled the equipment in a careful manner. He did not exceed the speed of twenty miles an hour during my entire ride." Shuman testified that when he realized the truck was out of control he told the respondent that something had happened and advised him to save himself if he saw a chance.

While the appellants attack the findings as containing no finding of wilful misconduct on their part and as containing no finding that any wilful misconduct proximately caused the injuries complained of, the main and, we think, the decisive question presented is whether the evidence is sufficient to sustain a finding of wilful misconduct on the part of the appellants.

Respondent's right to recover is dependent upon proof of ''wilful misconduct'' on the part of the appellants within the meaning of section 141¾ of the California Vehicle Act, as amended in 1931. The meaning of wilful misconduct has been considered in a number of cases, the reasoning of which need not be here repeated. (*Krause* v. *Rarity*, 210 Cal. 644 [193 Pac. 62, 77 A. L. R. 1327]; *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510]; *Malone* v. *Clemow*, 111 Cal. App. 13 [295 Pac. 70]; *Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279]; *Walker* v. *Bacon*, 132 Cal. App. 625 [23 Pac. (2d) 520].) It seems clear from the history and the wording of this statute that it was the intention of the legislature to confine the right to recover in guest cases to instances where there appears either an intent to injure the guest or a degree of recklessness greater and beyond the gross negligence which was formerly recognized as sufficient. Negligence is carelessness, whether greater or less in degree, and tends to be negative in character while wilful misconduct is something of a more positive nature involving the intentional doing of a wrongful act, with the intent to harm another, with an utter disregard of the consequences, or with knowledge that an injury to a guest will be a probable result. All of these situations include actual or implied knowledge that injury is probable. Wilful misconduct, within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.

The respondent relies on three acts or omissions as constituting wilful misconduct, which are thus stated: ''(1) Crossing the Ridge Route with a two-wheel brake equipped four-ton truck loaded to three tons or better, coupled with

a six-ton trailer upon which there were no trailer brakes, with the knowledge that the braking facilities were not adequate for mountain travel in the absence of compression of the motor, and that it was poor trucking practice to drive upon the public highways without adequate brakes on the truck and trailer; (2) failure of defendant truckdriver, after notice to him that oil was leaking from the rear housing of his truck, to stop or examine the rear end; (3) failure to bank the truck at a point where defendant knew he could so do after rear end of the truck gave way.''

■ In connection with the first of these matters there is evidence that when he was served with summons in this case Shuman stated that he had protested against taking the trailer without its air brakes connected with the truck and that he was told by his garage foreman that ''it would be his job if he refused''. The respondent also relies upon Shuman's statement on the witness-stand that he knew at the time of starting with the truck and trailer that the brakes were not adequate for mountain travel in the absence of compression in the motor, and that it was not good trucking practice to ''drive a motor vehicle without adequate brakes''. It is argued from this that Shuman knew the braking facilities on his outfit were not adequate for the trip in question. But knowledge that brakes are not sufficient in the absence of motor compression is quite different from knowledge that they will be inadequate when used with compression in the usual manner. Shuman also testified that it is good trucking practice to depend on motor compression almost entirely in order to save the brakes. It is well known that this is not only good trucking practice but good practice with any motor vehicle. That one should expect to use, and should rely upon, motor compression in connection with his brakes is in accordance with universal experience. There is no evidence that the brakes on the truck were not adequate when used with motor compression, and the only evidence in the record on that matter is that they were in good condition. The fact that he asked to have the trailer brakes also connected, if true, would indicate a desire on his part to take every precaution for safety, and the order given him indicates that the foreman considered the equipment ample as it was. It is inconceivable that this truck and trailer were either ordered or taken out with the knowledge and expecta-

tion that they could not safely make the trip intended, and at that time no one knew that the respondent would become a guest on the journey. The undisputed evidence is that before starting out Shuman stopped and considered whether to proceed or to wait until an air connection with the trailer could be secured, and that he decided to go ahead. It is not questioned that the equipment on the truck itself was ample for that vehicle, and it could well be expected that equipment sufficient for a heavy truck when fully loaded would also handle the same when partly loaded and pulling an empty trailer. It appears that Shuman was familiar with this road and had frequently driven over it. Not only does the evidence show that, before starting, he came to the conclusion that he could safely proceed, but it shows that his judgment was correct since he found the equipment ample until he had nearly crossed the mountains, and since he had full and complete control of the outfit on all hills until something gave way, a thing which could not have been known or anticipated at the time of starting so far as shown by the evidence. There is no evidence indicating that any lack of brakes was responsible for what occurred, or that additional brakes would have saved the situation. If an error was made in starting without the air coupling, nothing more than negligence appears, and it cannot be said that Shuman knew or should have known that an injury would probably result.

With respect to the second matter the respondent testified that he noticed the grease and asked Shuman about it. When asked what was said he testified: "I said grease leaked out of the rear end. He said 'We are going to stop pretty soon and I will see about it.'" This occurred after they had entered the Ridge Route. After they had stopped at Gorman the respondent asked Shuman "Did you look at the rear end", to which Shuman replied "No, I forgot it". The respondent also testified, "I believe that he thought it would be all right". Shuman testified that he had before seen truck housings leak slightly, and had had cars of his own with a small leak. This evidence indicates that the respondent did not inform Shuman that any unusual amount of oil was leaking from the rear end. It is not uncommon for small amounts of oil and grease to leak and drip from the working portions of trucks and automobiles. The truck

had operated perfectly for many miles after the respondent first spoke of the grease and the speed of the truck was slow. While it may have been negligence to fail to make an examination, there is nothing to show that Shuman realized the situation was unusual or dangerous, that he intentionally neglected to stop and look into the matter knowing at the time that an injury would probably result, or that he should have known this.

In the third matter referred to the respondent contends that the general rule of law that a person confronted with sudden danger is not to be held responsible for an error of judgment does not here apply, since Shuman's own negligence contributed to the emergency. While the rule relied upon might apply if the question of negligence was here involved, negligence alone is not sufficient to constitute wilful misconduct. After the emergency arose the driver was confronted with the problem of trying to control the truck and prevent an accident and injury, with the truck increasing its speed on a down grade with rugged hills on the right and a steep pitch into Grapevine Creek on the left. The evidence discloses that Shuman was kept busy trying to keep the truck on the highway and dodging traffic, that it was dark at the time, and that with the curves in the road he was unable to see by the light of the headlights any place where he thought he could safely bank the truck. It fully appears from the evidence that, at the time, he was endeavoring to avoid consequences which he thought more dangerous than the course he took, and that he was making an honest effort to prevent injury rather than to cause it. The fact, if true, that an examination of this part of the road in daylight reveals that there may have been one or two places where the truck could have been banked in comparative safety is utterly insufficient to show wilful misconduct in the action taken under the circumstances then present.

We are unable to agree with respondent's contention that the three matters referred to disclose ''a deliberate and intentional violation'' of section $93\frac{1}{2}$ (a) and section 139 of the California Vehicle Act. In addition to other circumstances, the facts that Shuman was himself injured and his son killed, that during the ride he gave the respondent a coat and blanket with which to keep warm, and that when danger became imminent he warned him to

jump if he had the opportunity, are strongly indicative that no act was intentionally done or omitted with the knowledge or expectation that any injury was probable.

The burden of proof is upon a guest to establish wilful misconduct within the meaning of the statute. We think this burden was not here met, that the evidence is not sufficient to sustain a finding of wilful misconduct, and that the facts of this case bring it squarely within the class of cases in which the legislature intended to deny a right of recovery.

A motion made by respondents to correct the findings was also submitted. This was based upon the fact that the findings as verbally approved by the trial court consisted of five pages, while the findings as signed, by inadvertence, included two copies of page three and omitted page four. The view we take of the evidence makes it unnecessary to pass upon this motion.

For the reasons given, the judgment is reversed.