[L. A. No. 14641. In Bank.—May 17, 1934.]

MINNIE DAUGHERTY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, J. B. QUINN, Trustee, etc., et al., Respondents.

Doyle, Clark, Thomas & Johnson and V. Betty Doheny for Petitioners.

Everett A. Corten and F. Britton McConnell for Respondents.

SHENK, J.—This is a proceeding to review an order of the respondent commission denying disability indemnity and

a death benefit to the petitioners as surviving widow and daughter of Charles H. Daugherty, deceased.

Daugherty was employed as a helper at an oil-well plant in Long Beach. On August 24, 1931, in the course of his employment, he was descending a stairway when within a step or two from the bottom he was seen by a workman on an adjoining property, Hawley by name, to stumble and fall backward. He did not arise quickly so Hawley went to him. When he got to his side Daugherty was standing. Hawley took him by the arm, helped him to walk a short distance, when he sat down on a bench. Daugherty seemed dazed but said he thought he was all right, whereupon Hawley departed to resume his own work and did not see the deceased again. No wound or other traumatic conditions were observed by Hawley except that one of Daugherty's fingers was bleeding. Apparently Daugherty was a night workman, for the accident occurred at 7 o'clock in the morning, and his wife testified that he came home about 7 that morning and that this was his usual time of arrival.

On arriving at his home he went to bed as usual but got up in about an hour complaining of a terrible headache. About noon of that day he had a convulsion. These spells recurred until, on September 6, 1931, he was, on the affidavit of his wife, taken to the psychopathic ward of the general hospital, where his trouble was diagnosed as probable cerebral thrombosis. He remained in the hospital for about ten days after which he went home, returning to the hospital every few days for treatment. He was discharged from the hospital on September 25th, and on October 15th went with his wife to his former home in Texas. In Texas he was unable to walk without assistance, the convulsions recurred, he gradually became worse and died in Texas on January 22, 1932. The certificate of the attending physician noted ''epilepsia caused by clog on brain'' as the cause of death.

Upon a full and extensive record of the evidence, both lay and professional, the commission found that it did not establish either that Daugherty's disability or his death was caused, aggravated or accelerated by any injury sustained by him, or by reason of his employment. The controversy hinges on whether there is substantial evidence to support the findings.

The deceased was a man about 48 years of age and prior to August 24, 1931, had been in apparent good health. He was not a robust man, but was considered by relatives as an "average healthy man". The history of his case taken at the general hospital showed that the wife had stated to a member of the hospital staff that the deceased had had a convulsion while at work. On August 21st, three days before he fell while at work, he had suffered visionary disturbances of the left eye. On September 22d his eyes were examined by an ophthalmologist, who reported "visual activity 20/50 with glasses and evidence of choked disc in the left eye". The evidence of the specialist, based upon a history of the case, showed that progressive visual disturbances with choked disc was "a sign universally accepted as evidence of increased intra-cranial pressure"; that the symptoms and signs presented by Daugherty between August 24, 1931, and January 22, 1932, were not due to the fall which took place on August 24, 1931, and that the fall was the result of a "petit mal" type of seizure which was the initial symptom of pre-existing lesion in the cerebrum. One of the doctors expressed the opinion that Daugherty's case was one of the intra-cranial hemorrhages due to his fall. There was no evidence of concussion of the brain, and other doctors stated that in order to bring about concussion of the brain and the consequent intra-cranial hemorrhage it was necessary that the patient sustain adequate trauma and that the symptoms of Daugherty from the outset were incompatible with the assumption of intra-cranial hemorrhage; that the fall sustained by Daugherty was due to a seizure of epileptiform character, and that the steady progression of intra-cranial tension extending over a period of five months was the cause of death. It is true that Doctor George W. Jones, assistant medical director of the commission, questioned whether Daugherty really fell, notwithstanding the uncontradicted testimony of Hawley that he saw him fall. It is therefore contended by the petitioners that the testimony of Doctor Jones was based upon a false premise, viz., the absence of a fall, and that the conclusion expressed by him is without evidentiary value. The opinions of Doctors John C. Ruddock and John B. Doyle were, however, based on the assumption of a fall on August 24, 1931, and on all of the other evidence in the proceeding.

Their review of the case, which is full and complete, was sufficient in itself to support the finding of the commission. There were conflicting opinions of the physicians and specialists as to the cause of the convulsions, and the controversy developed into a lively contest. The commission within its powers, as trier of the facts, could have adopted either view. The responsibility lay with the commission to make a determination on this conflicting evidence and on the record presented it cannot be said, as a matter of law, that the finding is without substantial support in the evidence. In such case the order must be affirmed. (*North Pac. S. S. Co.* v. *Industrial Acc. Com.*, 174 Cal. 500 [163 Pac. 910]; *Jenks* v. *Carey et al.*, 136 Cal. App. 80 [28 Pac. (2d) 91].)

The order is affirmed.

Waste, C. J., Langdon, J., and Preston, J., concurred.

Rehearing denied.