[L. A. No. 15014.   In Bank.—April 30, 1935.]

ANNE MEEK, an Infant, etc., et al., Respondents, v. H. M. FOWLER et al., Appellants.

Francis J. Gabel for Appellants.

Bronson, Bronson & Slaven, John H. Painter, Harry D. Parker, Raymond G. Stanbury, White McGee, Jr., Vernon W. Hunt, Redman, Alexander & Bacon, Herbert Chamberlin, Frankley & Spray, L. W. Frankley, Joseph A. Spray and W. H. Abrams, as *Amici Curiae* on Behalf of Appellants.

Henry E. Barbour and Tarance S. Magee for Respondents.

C. Douglas Smith, as *Amicus Curiae* on Behalf of Respondents.

WASTE, C. J.—This is an action for damages for personal injuries incurred by the plaintiff, Anne Meek, a guest in one of two automobiles involved in a collision at the intersection of Del Rey and Belmont Avenues near the city of Fresno. Her parents are joined as parties plaintiff. Named as defendants are the driver of the guest car, Harold M. Fowler, a minor, and his parents, who owned the car and who had signed his application for an operator's license, and the driver and owner of the other car involved in the

collision. Following a trial before the court, sitting without a jury, judgment went against the plaintiffs and in favor of all the defendants. Plaintiffs' motion for a new trial was granted as to the minor driver of the guest car and his parents, who have appealed from the order. They present two main contentions, the first of which involves the issue whether the evidence is such as to warrant a finding of wilful misconduct so as to make the driver of the guest car answerable in damages, under the 1931 amendment of section 141¾ of the California Vehicle Act. Should the evidence warrant such a finding, it is then urged that it becomes essential to determine whether such wilful misconduct may be imputed to his parents as owners of the car or as signers of his application for an operator's license. Upon this latter proposition the appellants urge, and they are supported by the briefs of several *amici curiae*, that because section 62 of the California Vehicle Act, and section 1714¼ of the Civil Code, provide that the signer of a minor's application for an operator's license, in the one case, and the owner of an automobile used with his implied or express consent, in the other, is liable for the "negligence" of the minor, or the user, as the case may be, no recovery can be had against such signer or owner for any wilful misconduct, as distinguished from negligence, of such minor or user, in the operation of such vehicle. The conclusion we have reached upon the first question above stated makes it unnecessary for us to pass upon the latter one. In our opinion, the evidence will not warrant a finding of wilful misconduct on the part of the minor operator, and we therefore refrain from expressing any opinion upon the question whether his wilful misconduct, if shown to exist, may be imputed to the owner of the car or the signers of his application for an operator's license.

The accident occurred about 7 o'clock on the evening of August 14, 1932. Just prior thereto the car in which the injured plaintiff was riding was proceeding in a southerly direction along the right side of Del Rey Avenue. The minor operator thereof testified that when he was approximately one hundred feet from the intersection of Belmont Avenue he was traveling at a speed of about twenty-eight miles an hour; that he then looked to his right and saw, over or through some vines or trees that line the thorough-

fare, the lights of an approaching car on Belmont Avenue; that said car, operated by the defendant Peckinpah, was at that time approximately two hundred feet from the intersection; that after looking to observe the lights and position of the approaching vehicle, he accelerated the speed of his car to approximately thirty miles an hour and continued on and into the intersection, believing that he had ample time to negotiate the crossing ahead of the Peckinpah car; that as his car entered the intersection he observed the other car near the west line of the intersection; that he immediately applied his brakes and turned his car to the left in the hope of avoiding a collision. This latter effort proved futile, the impact occurring near the center of Del Rey Avenue and on the south side of Belmont Avenue.

The testimony of the injured plaintiff, and that of another guest in the car, was, as to certain matters, antecedent to the accident, substantially the same. Their versions as to the rate of speed at which the guest car was traveling just prior to and at the time of the accident vary from that of the operator of said car. The plaintiff testified that when they were about a quarter of a mile from the intersection they were traveling about thirty-five miles an hour; that the defendant Fowler did not slow down as his car entered the intersection, even though he had been requested earlier in the evening by the plaintiff to go "at a slower speed at intersections"; that she saw the other car involved in the accident just before entering the intersection and when both cars were about an equal distance therefrom and traveling at about the same rate of speed; that on prior occasions the operator of the guest car "always drove all right"; that she did not remember telling an adjuster three days after the accident that the defendant Fowler reduced the rate of speed of his car to fifteen or twenty miles an hour, but that she did remember telling him, "our car was in the intersection first", and that the other car was going at a high rate of speed. A written statement, bearing plaintiff's signature, was introduced in evidence wherein appears the following: "We traveled south on Del Rey avenue about 25–30 miles per hour. Harold [operator of the guest car] slacked his car down to 15–20 miles per hour before entering the intersection. . . . [when] within the intersection a very short distance I saw the lights of a car approaching

the intersection . . . about 200 feet west of the intersection; it was traveling at a high rate of speed, I would estimate about 45–50 miles per hour. It was right on us in less than a moment . . . Harold did his best in attempting to avoid an accident by swerving to the left and trying to get across before the other car reached us. Our car was in the intersection first . . . '' Plaintiff attempted to explain those portions of the written statement that vary from her testimony by stating that they were untrue and were prompted by a desire to protect the defendant Fowler from a manslaughter charge in the event she died from the injuries incurred.

The other guest in the Fowler car testified that though earlier he had told the operator thereof to ''take it easy'', he nevertheless entered the intersection between forty and forty-five miles an hour. This witness likewise testified that he did not remember telling an adjuster that the guest car was traveling about twenty miles an hour at the time of the impact. A written statement, signed by this witness, was received in evidence and contains the following: ''As we approached the intersection Harold traveled about 25–30 miles per hour. Before entering the intersection Harold slowed down to about 15–20 miles per hour.''

The mother of the driver of the guest car, also named as a defendant, testified that she talked with the plaintiff on the day following the accident and that the latter said that the occupants of said car thought they could get across the intersection before the other car, which was approximately two hundred feet away; and that the plaintiff did not at that time blame the operator of the guest car for the happening of the accident, nor did she say he had been speeding.

The person who had procured the written statements above referred to testified that he heard the conversation between the plaintiff and the mother of the operator of the guest car, and that he returned two days later and procured the written statements. He stated that he wrote the details of the accident as narrated to him by the plaintiff and that the latter read and signed the same when completed.

■ We have examined the entire record and, in our opinion, those portions thereof most favorable to the plaintiffs will not support a finding of wilful misconduct. The

phrase "wilful misconduct", as employed in our so-called guest statute, has been variously defined in the many cases that have had occasion to consider the same. We shall not attempt to reconcile the several definitions and applications given to this phrase. It is satisfactorily defined in *Turner* v. *Standard Oil Co.*, 134 Cal. App. 622, 626 [25 Pac. (2d) 988], wherein it is declared that "'wilful misconduct', within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result".

The case of *Howard* v. *Howard*, 132 Cal. App. 124, 128 [22 Pac. (2d) 279], after defining gross negligence as set forth in *Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327], and what is meant by wilful misconduct as set forth in *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510], declares that "'The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury'.

"While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence and that this misconduct must be wilful. While the word 'wilful' implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and pre-

sumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result."

Such intent and knowledge of probable injury may not be inferred from the facts in every case showing an act or omission constituting negligence for, if this were true, any set of facts sufficient to sustain a finding of negligence would likewise be sufficient to sustain a finding of wilful misconduct. As has been repeatedly declared, " 'wilful misconduct' means something more than negligence—more, even, than gross negligence". (*North Pac. S. S. Co.* v. *Industrial Acc. Com.*, 174 Cal. 500, 502 [163 Pac. 910]; *Kastel* v. *Stieber*, 215 Cal. 37, 47 [8 Pac. (2d) 474].)

■ The evidence in the present case is capable of but one construction, viz., that the attempt of the driver of the guest car to cross the intersection in advance of the Peckinpah car, whether he was driving at a normal or an excessive rate of speed, was the result of his conclusion, mistaken though his judgment may have been, that he could safely negotiate said crossing before the arrival of the other car. His conduct under the circumstances constituted, at most, gross negligence. Upon the record now before us it cannot be said that he proceeded in utter disregard of, or that he was utterly indifferent to, the rights of his guests. While his judgment, under the circumstances confronting him, may have been poor, it does not appear that he was wantonly reckless in exposing his guests to danger, nor did his conduct partake of the nature of a wilful, intentional wrong.

The order appealed from is reversed.

Shenk, J., Thompson, J., Preston, J., and Seawell, J., concurred.

CURTIS, J., Dissenting.—I dissent.

If wilful misconduct is correctly defined in the opinion as implying "at least the intentional doing of something either

with knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result'', then I think the minor was guilty of wilful misconduct when he drove his car at a speed of forty to forty-five miles per hour onto and across an obstructed or blind intersection knowing that another car was approaching the intersection on the cross-street at a rapid rate of speed. In doing so, he was surely driving his car with a wanton and reckless disregard of the possible if not a probable result of a collision with the car which he knew was on the cross-street, or with some other car which might be on said cross-street and which was aproaching said crossing. I, therefore, submit that the opinion is erroneous in concluding that the minor was not guilty of wilful misconduct.