[Civ. No. 9567. Second Appellate District, Division One.—February 27, 1936.]

EDWARD GIMENEZ, a Minor, etc., Appellant, v. ROBERT RISSEN et al., Respondents.

ANTONIO SANCHEZ, a Minor, etc., Appellant, v. ROBERT RISSEN et al., Respondents.

Peter J. Youngdahl and G. G. Glick for Appellants.

Nourse, Betts & Jones and Forrest A. Betts for Respondents.

WHITE, J., *pro tem.*—These appeals are prosecuted from judgments entered upon directed verdicts. By stipulation the two cases were tried together, and by agreement both appeals were consolidated for consideration together in this court.

The actions were for damages for personal injuries sustained by the minor plaintiffs, who were guests in an automobile which overturned on Jefferson Avenue, approximately a block east of Higuera Street, in Culver City, about midnight, February 12, 1933. Their respective mothers were joined as plaintiffs in the capacity of guardians *ad litem.* Named as defendants are the owner and driver of the guest car, Robert Rissen, a minor, and his mother, Mrs. William R. Rissen, who had signed his application for an operator's license.

The evidence discloses that on the evening of the accident a number of young people, including the minor plaintiffs and defendant, met together for a social party; following a discussion of automobiles between the minor plaintiffs and the minor defendant, and particularly of the merits of the automobile owned by the minor defendant, Rissen, the two minor plaintiffs, upon the invitation of the defendant Robert Rissen, entered his automobile, and with him driving, proceeded up

the highway, traveling a distance of from two to two and one-half miles, at a speed ranging, according to the testimony, from 48 to 70 miles per hour. Defendant Robert Rissen then made a U-turn and started back at a speed testified to by plaintiff Edward Gimenez to be 80 miles per hour, and admitted by the minor defendant Robert Rissen to be 75 miles per hour, until the automobile came in contact with a manhole in the street, was overturned, and all of the occupants thereof injured. The minor plaintiffs testified that during the ride plaintiff Edward Gimenez remonstrated with the defendant driver and four or five times urged him to slow down and let them out, which requests went unheeded by the driver. Both minor plaintiffs testified that just before the accident and after Gimenez had several times requested Rissen to slow down, the latter said, ''The heck with you guys— I can handle this car.'' Defendant Rissen denied that either of his guests at any time wanted him to slow down or requested that they be permitted to get out of the automobile, or that he uttered the words ascribed to him in the testimony of the minor plaintiffs.

This appeal presents two main contentions, the first of which involves the issue of whether the evidence is such as to warrant a finding of wilful misconduct so as to make the driver of the guest car answerable in damages under the 1931 amendment of section 141¾ of the California Vehicle Act. Should the evidence warrant such a finding, it is then urged that it becomes essential to determine whether such wilful misconduct may be imputed to the parent, Mrs. William R. Rissen, as a signer of her minor son's application for an operator's license.

Upon the first proposition, before proceeding to discuss the evidence, it is necessary to set forth the rule governing the power of the trial court to direct a verdict. This question has received the attention of the courts of this state on numerous occasions, and the principles were reviewed in *Estate of Lances*, 216 Cal. 397 [14 Pac. (2d) 768], quoted with approval in *Estate of Flood*, 217 Cal. 763, 768 [21 Pac. (2d) 579], wherein our Supreme Court says:

'' . . . 'It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted ''only when, *disregard-*

*ing conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given.'' (*Newson* v. *Hawley,* 205 Cal. 188 [270 Pac. 364]; *Perera* v. *Panama Pacific Int. Exp. Co.,* 179 Cal. 63 [175 Pac. 454]; *Estate of Sharon,* 179 Cal. 447 [177 Pac. 283]; *Estate of Gallo,* 61 Cal. App. 163, 175 [214 Pac. 496]; 24 Cal. Jur., pp. 912–918.) Unless it can be said as a matter of law that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. (*Umsted* v. *Schofield Eng. Const. Co.,* 203 Cal. 224, 228 [263 Pac. 799].) A motion for a directed verdict ''is in the nature of a demurrer to the evidence, and is governed by practically the same rules, *and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. . . . Even though a court might be justified in granting a new trial it would not be justified in directing* a verdict on the same evidence. . . . The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. . . . If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict.'' (*Hunt* v. *United Bank & Trust Co. of California,* 210 Cal. 108, 117, 118 [291 Pac. 184, 188].) In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. *Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict.'* (Italics ours.)

"Two important propositions should be noted in the above quotation. First, the trial court, on a motion by a defendant for a directed verdict, cannot weigh all the evidence introduced by both sides; *all evidence in conflict with the plaintiff's evidence must be disregarded.*" (Italics ours.) "Second, the trial court, in determining such motion, cannot judge the credibility of witnesses, but must give to the plaintiff's evidence all of the value to which it would be legally entitled if the witnesses were believed."

█ We proceed, then, upon the basis that in order to defeat the motion for a directed verdict plaintiffs were required merely to offer competent evidence of such a substantial nature that it might reasonably be inferred therefrom that the driver of the guest car was guilty of wilful misconduct.

█ Plaintiff Edward Gimenez testified to the following conversation with defendant Robert Rissen: that the latter invited Gimenez to "Come along and I will show you my car"; that accepting such invitation, Gimenez and plaintiff Sanchez, also as an invitee, entered defendant Rissen's automobile, when, according to plaintiff Gimenez' testimony, the defendant driver of the guest car "went anywhere from 100 to 150 feet, and he was going 55 or 60 miles an hour in second; so I said to him, I said, 'Slow down or let us out.' And then, as I remember, he proceeded at that speed in high gear for a distance, I would judge, anywhere from two to three miles." Further in his evidence plaintiff Edward Gimenez testified: "Then he proceeded, I guess, two to two and a half miles at that speed, and then he turned around at a terrific rate of speed, a speed which I can't judge. It was a back-turn, turning back. Then he drove the car, it seemed, faster and faster, and I told him four or five times to slow down—I don't remember the exact words—and the last thing that was said, he said, 'The heck with you guys—I can handle this car.' " Testifying further, the plaintiff Edward Gimenez, in response to a question as to whether or not he looked at the speedometer, answered in the affirmative, and stated: "On the return trip the speedometer showed eighty miles an hour. His foot was down to the floor boards."

This evidence, in so far as the conduct of the driver of the guest car is concerned, and the conversations between the driver and plaintiff Edward Gimenez, was corroborated in

substance by the testimony of the other minor plaintiff, Antonio Sanchez.

With this evidence before us, and considering it in the light most favorable to plaintiffs, we now proceed to a consideration of what evidence is required to support a finding of wilful misconduct.

Various definitions of the phrase ''wilful misconduct'', as used in our so-called guest statute, appear in the many cases that have had occasion to consider the same, but our Supreme Court, in the case of *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194], adopts as satisfactory the definition in *Turner* v. *Standard Oil Co.,* 134 Cal. App. 622, 626 [25 Pac. (2d) 988], wherein it is declared that '' 'wilful misconduct', within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.'' Further in the case of *Meek* v. *Fowler, supra,* the Supreme Court says: ''The case of *Howard* v. *Howard,* 132 Cal. App. 124, 128 [22 Pac. (2d) 279], after defining gross negligence as set forth in *Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327], and what is meant by wilful misconduct as set forth in *Helme* v. *Great Western Milling Co.,* 43 Cal. App. 416 [185 Pac. 510], declares that *'The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute ''wilful misconduct'' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.'*

''While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another *or to do an act with a positive, active and absolute disregard of its consequences.* (Italics ours.) It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit

a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence and that this misconduct must be wilful. While the word 'wilful' implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. *But 'wilful misconduct' as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct* implies at least the intentional doing of something either with *a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.''* (Italics ours.)

Upon the record before us, and in the light of the testimony herein set forth, which we must view in the light most favorable to plaintiffs, and without consideration of opposing or conflicting evidence, we conclude that such evidence, if believed by the jury, would support a finding that the defendant driver operated his automobile with a knowledge that serious injury to the occupants would be the probable (as distinguished from the possible) result of his conduct, and that his conduct indicated a wanton and reckless disregard of its probable results.

Applying the rule laid down in *Estate of Flood, supra,* with which we are in accord, and being unable to say, as a matter of law, that no reasonable conclusion or inference of ''wilful misconduct'' can be made or drawn from the evidence, or that the evidence adduced in favor of appellants is so incredible or so lacking in support that if the jury had believed it and returned a verdict in plaintiffs' favor we would be compelled to reverse it on appeal, we conclude that the court below erred in taking the case from the jury and directing verdicts for the minor defendant driver, Robert Rissen. For this reason the judgments herein appealed from in favor of the minor defendant, Robert Rissen, must be reversed.

We come now to a consideration of the appeal by plaintiffs from the judgments in favor of Mrs. William R. Rissen, mother of the minor defendant, and the signer of said minor's application for an operator's license. Respondents

urge that because section 62 (b) of the California Vehicle Act provides that the signer of a minor's application for an operator's license is liable for the 'negligence' of the minor, no recovery can be had against such signer for any 'wilful misconduct' as distinguished from the 'negligence' of such minor in the operation of such vehicle.

Upon this latter proposition respondents urge that the liability imposed upon a parent signing the application of a minor child for an operator's license is purely statutory, and such liability must be restricted to the statutory limits of section 62 (b), which, on the date of this accident, February 12, 1933, reads as follows:

"Any negligence of a minor in driving a motor vehicle upon a public highway shall be imputed to the person or persons who shall have signed the application of such minor for said license, which person or persons shall be jointly and severally liable with such minor for any damages caused by such negligence except in the event the minor is driving the motor vehicle as the agent, or servant, or upon the business of a person other than the person who has signed said application."

If "wilful misconduct" is a species of negligence, then it follows that the liability for "wilful misconduct" is imputed to the person signing the minor's application, but if "wilful misconduct" is not embraced within the term "negligence", then the rules of statutory interpretation would seem to dictate that the legislature's intent was to confine such imputation of liability to cases of negligent conduct on the part of the minor. Support is given to this conclusion by a review of the history of automobile legislation in this state, particularly as it is found in the so-called guest statute. Section 141¾ of the California Vehicle Act, up to 1931, made the owner or driver or person responsible, liable for injuries proximately resulting to a guest from the intoxication, wilful misconduct, or gross negligence of such driver. In 1931 the legislature, by amendment to the guest statute, struck therefrom the words "gross negligence", thereby restricting liability for injuries to a guest to those injuries proximately resulting from the intoxication or wilful misconduct of the driver. This legislative action, it seems to us, was clearly intended to remove from the statute any liability for even gross negligence, and would indicate that the legislature un-

derstood the distinction between negligence and wilful misconduct, and desired to limit liability in this class of cases (except for intoxication) solely to wilful misconduct as distinguished from negligence or even gross negligence.

Appellants earnestly contend that the term "negligence", as used in the act, is broad enough in its legal signification to cover both the careless and the wilful acts of a minor, but the courts seem to hold that there is a well-defined distinction between mere "negligence" and "wilfulness"; that negligence is opposed to diligence and signifies the absence of care; that it is negative in its nature, implying a failure of duty, and excludes the idea of intentional wrong; that it accordingly follows that the moment a person wills to do an injury he ceases to be negligent. *(Stephenson* v. *Southern Pac. Co.,* 102 Cal. 143 [34 Pac. 618, 36 Pac. 407] ; *Smith* v. *Whittier,* 95 Cal. 279 [30 Pac. 529] ; Beach on Contributory Negligence, sec. 62; *Gardner* v. *Heartt,* 3 Denio (N. Y.), 232; *Cleveland, C. C. & St. L. Ry. Co.* v. *Tartt,* 64 Fed. 823 ; *Raming* v. *Metropolitan St. Ry. Co.,* 157 Mo. 477 [57 S. W. 268] ; *Holwerson* v. *St. Louis etc. Co.,* 157 Mo. 216 [57 S. W. 770, 50 L. R. A. 850] ; *Linton Coal & Min. Co.* v. *Persons,* 15 Ind. App. 69 [43 N. E. 651] ; *Dull* v. *Cleveland, C. C. & St. L. Ry. Co.,* 21 Ind. App. 571 [52 N. E. 1013] ; *Brooks* v. *Pittsburgh, C. C. & St. L. Ry.,* 158 Ind. 62 [62 N. E. 694].)

An interesting and illuminating discussion of this question is found in the case of *Tognazzini* v. *Freeman,* 18 Cal. App. 468, 474 [123 Pac. 540], wherein the court says:

"Notwithstanding the confused and indiscriminate use at times of the terms 'negligence' and 'wilfulness' by judges and text-writers, it is certain that the weight of authority supports the view that those terms have a *distinct* and well-defined meaning, which is clearly pointed out in *Holwerson* v. *St. Louis etc. Co.,* 157 Mo. 216 [50 L. R. A. 850, 57 S. W. 774], where it is said: 'By "negligence" is meant ordinary negligence—a term the significance of which is reasonably well fixed. By gross negligence is meant exceeding negligence—that which is mere inadvertence in a superlative degree. . . . By *"wilful negligence" is meant not strictly negligence at all, to speak exactly, since negligence implies inadvertence, and whenever there is an exercise of will in a particular direction there is an end of inadvertence,* but rather an intentional failure to perform a manifest duty, which is important to the person injured, in preventing the injury, in

reckless disregard of the consequences as affecting the life or property of another. *Such conduct is not negligence in any proper sense, and the term "wilful negligence", if these words are to be interpreted with scientific accuracy, is a misnomer.'* " (Italics ours.)

In the case of *Meek* v. *Fowler, supra,* our Supreme Court differentiates between the terms "negligence" and "wilful misconduct" in the following language:

"But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence, nor the mere intent to do the act which constitutes negligence."

And again, in the same case, the Supreme Court says:

"As has been repeatedly declared, 'wilful misconduct' means something more than negligence—more even than gross negligence. (*North Pacific S. S. Co.* v. *Industrial Acc. Com.,* 174 Cal. 500, 502 [163 Pac. 910] ; *Kastel* v. *Stieber,* 215 Cal. 37, 47 [8 Pac. (2d) 474].)"

It is also noteworthy, in connection with section 62 (b) of the California Vehicle Act, that in 1935 the legislature, through the adoption of section 352 of the Vehicle Code, provided that a minor's liability for damages arising out of his driving a motor vehicle upon a highway is imposed upon the person or persons who signed and verified the application of such minor for all purposes of civil damages, and specifically provides that such liability shall not be limited to the negligence of the minor, but shall include his wilful misconduct as well. Thus we see the legislature again recognizing the distinction between negligence and wilful misconduct; but for us to hold that prior to the adoption of the 1935 amendment, however desirable and advisable such amendment is, in the face of the provisions of the then existing section (62[b]) and the language of our courts, that it was intended to impute liability for wilful misconduct to the signer of a minor's application for a license, would require us, under the guise of judicial interpretation, to read into the statute a liability which the language used in the law excludes therefrom. This we cannot do.

The judgments in favor of defendant Robert Rissen are reversed and the causes remanded for new trials. The judgments in favor of defendant Mrs. William R. Rissen are affirmed.

York, Acting P. J., and Doran, J., concurred.