[Civ. No. 1679. Fourth Appellate District.—December 1, 1937.]

A. V. FISHER et al., Respondents, v. L. R. ZIMMERMAN, Appellant.

Mathes & Sheppard, Wm. C. Mathes and Lloyd Melvin Smith for Appellant.

Wallace P. Rouse for Respondents.

MARKS, J.—This is an appeal from an order granting a new trial which recited that "plaintiff's motion for a new trial herein be and the same is granted *and* all grounds in the motion for new trial including the insufficiency of the evidence to sustain the verdict". ▉ We need only consider the last ground specified in the order.

This is a wilful misconduct case. Plaintiffs were guests of defendant on a round trip from a Metropolitan Water District Camp near Rice, California, to the site of Parker Dam on the Colorado River. They were riding in the Chrysler automobile of defendant. The accident happened on the return trip at about 12 o'clock midnight. The road had a hard oiled surface with soft sand shoulders. There was a curve in the road about a mile east of the place of the accident. After leaving this curve the road ran in a straight line for about a mile. As is usual in desert roads it had several dips where its surface departed from the horizontal. The defendant was very familiar with the road.

One of the plaintiffs thus described the accident and the events immediately preceding it:

"I don't know how fast he was going at that time. The fender of Mr. Zimmerman's car came into contact with the other car. We never saw the other car after it passed. After the contact of the two cars the Chrysler traveled, I would say, one hundred fifty feet before it really turned over. When he hit the soft shoulder the first time he turned out, and that is when the cars touched; then he pulled his car back into the shoulder on the right hand side, and then back out of the sand again; and he was comparatively straight across the road; and that was done just as fast as he could do it. I would say in one hundred fifty feet it all happened and then his car rolled and headed back the way we were coming on the other side of the road. The car turned on the side, then up on the top and over on the other side. That is what you would call a three-quarter turn. Whether it made another turn or not, I don't know. The other car never stopped. The Chrysler was going around sixty miles an hour at the time of its contact with the other automobile. At the time when it hit the dirt shoulder he was making around eighty or eighty-five miles an hour. For a mile or two or three miles before the accident the car was swerving and zigzagging across the road. . . . When you would go down on the dip, it just seemed like the sensation it is running out from under you; and when you come up on top, the back end of it just seems to come up. From the time we left that one curve this side of those dance halls, practically all of our conversation was trying to get him to drive steady and slower. During that interval I would say we demanded he drive slower two or three times. He made no response to those demands; only after he came around that one curve I mentioned he slowed down then for just a little bit, and then went speeding again and he never slowed down any more until he threw on the brakes and tried to slow down when he saw the car coming. When he started speeding up this last time I asked him to drive slower; that there was a car coming; and then is when he threw on his brakes and hit the sand. At that time the car was about a mile away. In a very few seconds after I stated the car was coming we hit the sand. Before we hit the soft shoulder on the road he had not altered the speed of the car enough to notice it. Just

as quick as he saw the car approximately a mile away, and my wife stressed the point he should slow down, he threw on his brakes and it seemed like he just hit the sand instantly, and right after that, that is when the accident occurred. . . . Q. Will you answer this yes or no: Was he going 55 or 60 when he hit the shoulder? A. When he hit the shoulder? Q. Yes. A. I would say he was going faster than 85 or 90, 90 or 95. Q. Just a minute. You told us he was going 55 or 60 when he hit the shoulder. What is the correct statement? What do you want to testify? A. I will testify he was going 55 or 60 when the accident happened; and before the accident happened he was making 80 or 85 miles an hour. Q. I don't think I quite understand. I understood you a minute or two ago to say when he first hit the shoulder he was going 55 or 60. Is that correct? A. You got me all wrong. I claim that the car was going 55 or 60 when the car hit the shoulder the last time and turned into the other car. We were making 85 miles an hour when he started to slow down, and he threw on his brakes and the car went out of control and he hit the shoulder and then hit the other car. I would say that he slowed down to around sixty miles an hour as he hit that shoulder and hit the other car. As far as I could say, he hit the shoulder only once. He was going sixty miles an hour when he hit the shoulder. A couple of minutes before the accident he was going faster than that. There is only a few seconds in there from the time all this happened, and it was a fast speed of around eighty-five miles an hour; and then he hit the shoulder after he had thrown his brakes on. That is when his car went out of control and it was around sixty miles an hour when he hit that shoulder and directly into the car. That is what I want to swear to. The other car was about a mile away when I first saw it. When our car hit the shoulder the other car was a hundred and fifty feet from us. It might have been a hundred feet. I won't say it was a hundred and fifty, but it was just a small space in there, both cars coming together. The other car was going as fast as forty miles an hour; maybe a little faster; . . . ''

In *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194], the Supreme Court defined wilful misconduct as follows:

''We shall not attempt to reconcile the several definitions and applications given to this phrase. It is satisfactorily defined in *Turner* v. *Standard Oil Co.,* 134 Cal. App. 622,

626 [25 Pac. (2d) 988], wherein it is declared that ' "wilful misconduct", within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.' "

The position occupied by a trial judge in passing on a motion for new trial made on the ground of insufficiency of the evidence to sustain the verdict and judgment has been likened to that of a thirteenth juror. He should review all the evidence, weigh its sufficiency, and judge the credibility of the witnesses. He may believe, and accept, in whole or in part, the testimony of any witness which he concludes is true. He may reject any evidence which he believes to be false. He may draw reasonable inferences from the evidence. In so doing he is at liberty to disregard the findings of the jury which are implied from the verdict. (*Olinger* v. *Pacific Greyhound Lines,* 7 Cal. App. (2d) 484 [46 Pac. (2d) 774].)

*Moyer* v. *Dresch,* 2 Cal. App. (2d) 655 [38 Pac. (2d) 849], was a wilful misconduct case in which the trial judge granted a motion for new trial because of the insufficiency of the evidence to sustain the verdict. In affirming the order this court said:

"The rules governing a trial judge in passing on a motion for new trial upon the ground of insufficiency of the evidence are set forth in 20 California Jurisprudence, page 111, as follows: 'A motion for new trial on the ground of the insufficiency of the evidence to justify the verdict or other decision is addressed to the sound legal discretion of the trial court, which has power to set aside a verdict or decision and to grant a new trial, in whole or in part, in every case where, in its judgment, the evidence is insufficient. Accordingly, it is settled that an order granting or refusing a new trial on the ground of insufficiency of the evidence or where this is one of the grounds set up is conclusive upon the appellate court and may not be disturbed on appeal, unless it appears that there was a manifest abuse of such discretion. Indeed, the action of the trial court in granting a new trial upon the ground of insufficiency of evidence is so far a matter within its discretion that if there is any appreciable conflict in the evidence its ruling is not open to review. Thus it

seems that where there is some evidence in favor of the applicant, and especially where he also presents affidavits of newly discovered evidence, the court may grant a new trial, although the only conflict in the evidence consists of doubtful inferences of ultimate facts to be deduced from uncontradicted probative facts, since it is exclusively within the province of the trial court to make all inferences and deductions of fact, where the facts necessary to support the judgment do not naturally follow as a necessary sequence from the probative facts.'

"In *Cookson* v. *Fitch*, 116 Cal. App. 544 [3 Pac. (2d) 27, 29], it is said: 'A motion for new trial upon the grounds of insufficiency of the evidence to sustain the verdict and judgment is addressed to the sound discretion of the trial court. Its order will not be disturbed on appeal except in a clear case of the abuse of such discretion. As was said in the case of *Smith* v. *Royer*, 181 Cal. 165 [183 Pac. 660, 663]: "In a jury trial a party is entitled to two decisions on the evidence—one by the jury and one by the trial court, and the trial court is not bound by a conflict in the evidence. (*Dickey* v. *Davis*, 39 Cal. 565; *Curtiss* v. *Starr*, 85 Cal. 376 [24 Pac. 806]; *Bates* v. *Howard*, 105 Cal. 173 [38 Pac. 715]; *Condee* v. *Gyger*, 126 Cal. 546 [59 Pac. 26]; *Green* v. *Soule*, 145 Cal. 96 [78 Pac. 337].)"'" (See, also, *Clippinger* v. *Reiss*, 17 Cal. App. (2d) 604 [62 Pac. (2d) 418].)

 Generally speaking, it is the rule in California that the question of the existence of wilful misconduct is usually one of fact addressed to the trier of fact and not one of law addressed to the appellate court. (*Del Bosque* v. *Singh*, 19 Cal. App. (2d) 487 [65 Pac. (2d) 951]; *Jackie Coogan Productions, Inc.*, v. *Industrial Acc. Com.*, 21 Cal. App. (2d) 225 [68 Pac. (2d) 750]; *Medberry* v. *Olcovich*, 15 Cal. App. (2d) 263 [59 Pac. (2d) 551, 60 Pac. (2d) 281].) In the instant case this question as one of fact was first addressed to the jury at the close of the trial, and next to the trial judge on the motion for new trial. If the evidence which we have quoted would support a finding of wilful misconduct on the part of defendant, the order granting the motion for new trial must be affirmed.

It is generally held that mere speed, of itself, does not constitute wilful misconduct. This may not always be true. There may be a point at which the speed becomes so excessive,

the danger of injury to the passenger so probable, that such extreme speed alone might be held to be wilful misconduct. Speed coupled with other circumstances has been held to constitute wilful misconduct. (*Petersen* v. *Petersen,* 20 Cal. App. (2d) 680 [67 Pac. (2d) 759]). In *Hall* v. *Mazzei,* 14 Cal. App. (2d) 48· [57 Pac. (2d) 948], it is said:

"We do not wish to be understood as holding that mere speed may never constitute wilful misconduct if indulged in under certain conditions. Wilful misconduct, like negligence, must relate to the time, place, person and surrounding circumstances, and must be measured by them. Excessive speed under some circumstances may amount to negligence, under others to gross negligence, and under still others to wilful misconduct."

We believe that the evidence we have quoted would support a finding of wilful misconduct if one had been made in the trial court. When the approaching automoblie was first seen it was a mile away from defendant's car. At eighty-five miles an hour the automobile of defendant would have traveled the intervening mile in less than one minute had the other car been standing still. The speed of the approaching automobile appreciably reduced the time elapsing before the two cars came into contact. The condition of the oiled road with its dips and soft shoulders, coupled with the excessive speed at which defendant drove his automobile in the face of an approaching car, are circumstances which made injury to the passengers not an improbable result.

Plaintiffs complain of an instruction attempting to define wilful misconduct. This instruction does not conform to the definition of wilful misconduct given in *Meek* v. *Fowler, supra.* It should not be given again.

The order granting a new trial is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 27, 1938.